

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

*Patricia McLane*  *36 S. Charles Street*  *DIRECT: 410-209-4942*
*Assistant United States Attorney*  *Suite 400*  *MAIN: 410-209-4800*
*Patricia.McLane@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-3124*

August 29, 2025

The Honorable Julie R. Rubin
United States District Judge
101 W. Lombard Street
Baltimore, Maryland 21201

      Re:      **Sentencing in *United States v. Owen Jarboe*
              Criminal No. JRR-24-0023**

Dear Judge Rubin:

      The Defendant, Owen Jarboe, is scheduled for sentencing on September 10, 2025, at 10:00 a.m. As explained below, a sentence of **no less than 40 months' imprisonment**, is sufficient, but not greater than necessary, to comply with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

      The Government read a lengthy Statement of Facts at the Rule 11 hearing about the damage caused by the Defendant. The PreSentence Report ("PSR") reiterates the terrible acts the Defendant and his co-defendants set into motion with their coercive words. But a simple recitation of the facts does not capture how the victims of these crimes were impacted at the time, and how they are still affected to this day. These are not victimless crimes; rather, these crimes done by "anonymous" defendants from the comfort of their homes who send words and ideas out into the world that disrupt and ruin lives of others; cause stress and fear to citizens and law enforcement; and spend limited government resources. Some victims of the Defendant's crimes are speaking out and their impact statements are incorporated here. *See* ECF 122. The letters provide the Court a full picture of the consequences of the Defendant and his co-defendant's actions.

      **I.  Sentencing Guidelines and Criminal History Calculation**

      The Government agrees with the guidelines calculations set forth in the PSR despite their previous calculations. ECF No. 100 at ¶ 61; *see also* ECF 90, 91, 102, and 112. Clearly, the Government's prior calculations were wrong. In the co-defendants' cases the Government is bound by the Plea Agreement and the miscalculation is an academic matter. Here, the parties do not have a Plea Agreement; accordingly, the Government is not bound by any previous calculations or agreed-to calculations with co-defendants who did sign a Plea Agreement. The Court previously calculated the guidelines in a co-defendant (Brayden Grace) case and determined the total offense

level to be 21 as outlined in his PSR. There is no difference between the co-defendants as to the guidelines.[1]

More importantly, the Government disagrees with the Defendant's argument. He is far too caviler with the response and stress caused by his swattings in Georgia and Albany. To be certain, it is the job of law enforcement to respond to calls for service. However, the nature of the calls – murder, attempted murder, and threats to others – required an elevated level of attention by law enforcement. The disruption caused by these criminal acts are best expressed in the letter from the officers who responded to the Albany airport. *See* ECF 122. These were not simple traffic stops; these devious acts required dozens of law enforcement to divert attention away from others in actual need to respond to a potentially *deadly* attack. A four-level enhancement for both acts is more than warranted under U.S.S.G. § 2A6.1(b)(4)(A).

The Government agrees with the Defendant's criminal history in the PSR. *Id.* at ¶ 65. Accordingly, with a total adjusted offense level of 21 and a criminal history category of I, the advisory sentencing guidelines range is 37-46 months. The Government believes a sentence of no less than 40 months' incarceration is sufficient, but not greater than necessary, to accomplish the goals of the Sentencing Reform Act. In no way should a variant sentence be imposed for the Defendant, and certainly not one so radically below the guidelines as the 24-month incarceration requested by the Defendant.[2]

## II.     Analysis of the Factors Set Forth in 18 U.S.C. § 3553(a)

### a.   Nature, Circumstances, and Seriousness of the Offense

The Defendant did not just encourage others to commit acts; nor did he commit acts at the behest of others. Rather, the Defendant did *both*. The Defendant was the architect and builder of the swatting in Alabama, Delaware, Albany, and Georgia. The Defendant *made the calls himself* in these events and then told the co-defendants to post them to encourage others to commit similar acts. This decision, to be a one-man swatting shop, differentiates him from the co-defendants. The Government shall play at the sentencing hearing some of the calls the Defendant made to illustrate the determination and intent of the Defendant.

The seriousness of these crime cannot be over emphasized. The Defendant's words and actions caused panic and fear over the course of a few months. People thought their lives were in danger; law enforcement thought people's lives were in danger; and despite the intent or reasoning behind the Defendant's words, people *could* have been seriously injured or killed. Words matter and here, words set into motion serious consequences.

Further, the words were meant to inspire others to commit similar acts. These crimes do not happen in a vacuum. The purpose of committing these crimes is to target victims and coerce

---

[1] Because the Agreement was pursuant to Rule 11(c)(1)(C), the Court referenced Federal Criminal Procedure Rule 32 and determined the difference did not impact the binding plea.

[2] The recommended sentence is a significant variance even assuming the Defendant's guidelines calculation of 33-41 months.

them into doing the same to avoid further victimization of themselves. It is like a pyramid scheme of pain, stress, and havoc. And the nature of these crimes makes it very difficult for law enforcement assign attribution. The web sites used by the Defendant and others are stealth in nature. Recovering evidence is time consuming and difficult, making it virtually impossible for the crimes to be uncovered and certainly impossible to thwart the crimes at inception.

### b. History and Characteristics of the Offender

The Government does not argue that the Defendant has suffered at the hands of others and suffers from mental health disorders. The Defendant is in clear need of mental health treatment and educational services. A sentence of no less than 40 months will afford the Defendant the opportunity to receive both. But while these deficiencies may explain why the Defendant committed such dangerous crimes, it does not excuse it. Moreover, it does not fully explain why the Defendant sought attention in a criminal arena rather than finding another way to express himself. Unfortunately, the Defendant is not unique; many Maryland residents suffer similar circumstances and do not harass, swat, or coerce others. The Defendant goes to great length to excuse his acts in the sentencing memorandum but ignores the anguish caused to others by his acts.

No amount of mitigation can justify the Defendant lashing out at innocent citizens. The Defendant did not commit crimes against those that caused him distress; rather, he continued the cycle of abuse by attacking others who had no warning or reason to suspect they were being targeted. The Defendant cannot request mercy when he not only showed none to others but also taught others how to act in a similar manner.[3]

### c. Deterrence and Public Protection

The Government believes their recommended sentence is necessary to protect the public and adequately deter the Defendant from further criminal conduct.

First, the public will be protected from further crimes of the Defendant who will be removed from the community for over three years. The Government anticipates the Defendant's access to the websites and technology he used to commit these crimes would be banned, limited, or at least and monitored while incarcerated. Further restrictions on his use of technology should be in place while on supervised release to provide additional protection to the public.

Second, the sentence will serve to deter the Defendant once released from incarceration. Expecting the Defendant to never use technology is not realistic given his age and the prevalence

---

[3] The argument that additional incarceration will be like his experiences in the Chesapeake Detention Facility ("CDF") is not persuasive. Incarceration is not pleasant. The Government is not minimizing what happened to the Defendant while at CDF, but it is unfortunately not an unusual experience for defendants. Moreover, CDF is a local facility without the resources a federal detention center and the Government believes the Defendant will have better opportunities for treatment, rehabilitation, and structure for reporting bad actors.

of it in our society. But the threat of future incarceration will hopefully make the Defendant circumspect. The Defendant actually grees with this premise in his sentencing letter.

Finally, the Defendant has two co-defendants. The Government requested the same sentence for all three men. In August, the Court sentenced Brayden Grace to 35 months' incarceration.

### III.    Conclusion

Based on the foregoing, the United States respectfully submits that a sentence of no less than 40 months' imprisonment is fair, reasonable, and no greater than necessary.

    Respectfully Submitted,

    Kelly O. Hayes
    United States Attorney

    ___/s/_____

    Robert Goldaris
    Patricia McLane
    Assistant United States Attorneys